## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:10-cr-01805-RB |
| | ) | |
| CONCEPCION MAJALCA-AGUILAR, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Amended Objections to the Pre-Sentence Report and the United States' Response and Sentencing Memorandum. (Docs. 68 & 70.) The Pre-Sentence Report (PSR) calculated a base offense level of twelve and recommended **(A)** a three-level enhancement for smuggling, transporting, or harboring of six to twenty-four unlawful aliens under U.S.S.G. § 2L1.1(b)(2)(A); **(B)** a two-level enhancement for abusing a position of public or private trust under U.S.S.G. § 3B1.3; and **(C)** a two-level enhancement for Defendant's role in the criminal enterprise as an organizer, leader, manager, and supervisor under U.S.S.G. § 3B1.1(c).  Both the government and Defendant objected to portions of the PSR.

Having reviewed the PSR, the First and Second Addendums to the PSR, the parties' memoranda, the relevant case law, and having held an evidentiary hearing in this matter, the Court imposes a three-level enhancement under § 2L1.1(b)(2)(A) for conspiring to smuggle, transport, or harbor six to twenty-four undocumented aliens and a four-level enhancement under § 3B1.1(a) for serving as an organizer or leader of a criminal enterprise with five or more participants.  Defendant's resulting total adjusted offense level is therefore nineteen (19).

## I.    BACKGROUND

On July 14, 2009, two undocumented aliens, Ms. Maria Suarez-Moreno and Mr. Jose Angel Oliveros-Martinez, both seeking to illegally enter the United States, were driven to the U.S.-Mexico border near Palomas, Mexico by an unidentified man known as "El Guerro" and instructed to cross over to an onion field on the U.S. side of the border located near Columbus, New Mexico. They were told that after entering the United States, they should join a group of seasonal workers farming the land, who were employed by Defendant Concepcion Majalca-Aguilar, a farm labor contractor with WR Johnson & Sons, LLC. The undocumented aliens were instructed to blend in with the agricultural workers and wait to be instructed as to the next stage of their journey into the United States. Later that day, an unknown man in a pickup truck transported Ms. Suarez-Moreno and Mr. Oliveros-Martinez from the onion fields to a nearby trailer owned by Defendant's daughter. Defendant stopped by the trailer that evening to bring the undocumented aliens food and water. Defendant then came back the following morning and told them to get ready, as a blue car would be stopping by shortly to pick them up. Approximately two hours later, a blue car driven by Kristen Dawn Macias and Stephen Ketchum May arrived at the trailer. (PSR at 4–5.)

At trial, co-conspirators Stephen Ketchum May and Vielka Ramirez testified that they assisted Defendant in the transportation of undocumented aliens on several occasions. (PSR at 8.) Mr. May was arrested by United States Border Patrol agents on July 15, 2009. At that time, Mr. May was transporting Ms. Suarez-Moreno and Mr. Oliveros-Martinez. Mr. May indicated that he had also assisted Defendant in the transportation of illegal aliens to Albuquerque in May 2009. Ms. Ramirez testified that she assisted Defendant in the transportation of illegal aliens on two separate trips in June and July 2009.

On September 2, 2010, the jury found Defendant Conception Majalca-Aguilar guilty of

Conspiracy to Transport Illegal Aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I).  The United

States Probation Office subsequently prepared a Pre-Sentence Report.  Following the disclosure of

the PSR, Defendant objected to the recommended three-level enhancement for smuggling six to

twenty-four illegal aliens under § 2L1.1(b)(2)(A) and the recommended two-level enhancement for

abusing a position of trust under § 2L1.1(b)(2)(A). (Doc. 68.)  The government objected to the

recommended two-level enhancement under § 3B1.1(c), arguing instead that Defendant should

receive a four-level enhancement under § 3B1.1(a) for serving as an organizer or leader of a criminal

enterprise involving five or more participants. (Doc. 70.)

## II.      ANALYSIS OF OBJECTIONS TO PSR

### A.      Transporting Illegal Aliens Enhancement:  Defendant Argues That He Should Not Receive Three-Level Enhance for Transporting Six to Twenty-Four Aliens Pursuant to U.S.S.G. § 2L1.1(b)(2)(A)

At trial, co-conspirators Stephen May and Vielka Ramirez testified that Defendant

participated in the smuggling, transporting, or harboring of at least six to eight undocumented aliens.

The Presentence Report indicates that under U.S.S.G. § 2L1.1, this merits the imposition of a three-

level enhancement.  Defendant argues, however, that he should only be held accountable for

assisting to transport the two aliens apprehended by United States Border Patrol Agents in

Mr. May's automobile on July 15, 2009, as attributing any other aliens to him based on the

uncorroborated trial testimony of the government's informants (co-conspirators May and Ramirez)

is not appropriate.  Defendant asserts that this testimony should not be considered by the Court, as

it is simply not credible.  Accordingly, Defendant disputes the evidentiary basis upon which the PSR

recommends enhancement under § 2L1.1(b)(2)(A).

When there is a dispute as to a sentencing factor, the parties are given the opportunity to

present evidence to the Court regarding the disputed factor, and the Court must then consider the

evidence and resolve the dispute.

> (a)     When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

> (b)     The court shall resolve disputed sentencing factors at a sentencing hearing in accordance with Rule 32(i), Fed. R. Crim. P.

U.S.S.G. § 6A1.3 (Resolution of Disputed Factors, Policy Statement); *see also United States v. Beaulieu*, 893 F.2d 1177, 1179–80 (10th Cir. 1990); *United States v. Alfaro*, 919 F.2d 962, 964 (5th Cir. 1990). In the case of sentencing increases, the government carries the burden of proof by a preponderance of the evidence. *United States v. Rice*, 52 F.3d 843, 848 (10th Cir. 1995). Accordingly, it was incumbent upon the government to come forward with evidence that Defendant conspired to smuggle, transport, or harbor six to twenty-four unlawful aliens.

The government pointed to the trial testimony of Defendant's co-conspirators as supporting the three-level enhancement under § 2L1.1. Evidence can come from any source—including sworn trial testimony, affidavits, past crimes, confidential informants, unsworn assertions, and even hearsay—provided it is relevant and bears sufficient indicia of reliability. *Beaulieu*, 893 F.2d at 1179–81; *Alfaro*, 919 F.2d at 964–66; *United States v. Johnson*, 823 F.2d 840, 842 (5th Cir. 1987). Defendant asserts that the sworn trial testimony of his co-conspirators is unreliable because they were induced by the government to testify against him with the reward of a reduced sentence. (Doc. 71 at 1.) Defendant points out that the government has the burden of proof, and "[j]ust because a witness testifies to a given fact at trial does not mean it is sufficient to sustain this burden." (Doc. 71 at 2.) Of course, the government must be held to its burden; however, the Court

4

finds the evidence was reliable and shows by a preponderance of the evidence that Defendant conspired to smuggle, transport, or harbor six to twenty-four unlawful aliens.

The fact that the evidence was part of the trial testimony presented against Defendant, that the statements were given under oath, and that Defendant had the opportunity to cross-examine the witnesses lends credibility to the evidence. Additionally, having observed the trial, the Court found the evidence reliable. Still, Defendant argues that the testimony regarding the incidents of smuggling other than July 15, 2009 were not scrutinized by the jury because Mr. Majalca-Aguilar could have been convicted based on the July 15, 2009 incident alone, and therefore, the government has not met its burden of proof. (Doc. 71 at 2.) Nonetheless, it is not the jury who must consider the reliability of the evidence, but the Court. Having found the evidence reliable, the Court concludes that a three-level enhancement under § 2L1.1 for transporting six to twenty-four illegal aliens is appropriate.

**B.      Position of Trust Enhancement: Defendant Argues That He Should Not Receive Two-Level Enhancement for Abusing a Position of Private or Public Trust Pursuant to U.S.S.G. § 3B1.3**

"For Defendant to be subject to this enhancement, the court must find two things: (1) Defendant possessed a special skill or a position of trust; and (2) Defendant used that skill or abused that position to significantly facilitate the commission or concealment of the offense." *United States v. Burt*, 134 F.3d 997, 998–99 (10th Cir. 1998); *see also United States v. Spear*, 491 F.3d 1150, 1153 (10th Cir. 2007). Defendant argues that he should not receive a two-level enhancement for his position as a labor contractor with WR Johnson & Sons, LLC, as the position did not represent a position of public or private trust, nor did the position require a special skill. (Doc. 68 at 4–6; Doc. 71 at 3–5.) The government counters that Defendant's position as a labor contractor for WR Johnson & Sons, LLC allowed him to control the farm workers and agricultural property

which borders Mexico, and that he used this position and the property's unique location to facilitate the smuggling of undocumented aliens, who would cross the border and then mix with the onion pickers until being transported to a nearby trailer controlled by Defendant. (Doc. 70 at 3–4.)

The Court must make a factual determination as to whether the evidence supports a finding that Defendant held a position of trust.  "In making this determination, the district court may consider a number of factors, including: [1] 'the extent to which the position provides the freedom to commit a difficult-to-detect wrong, and whether an abuse could be simply or readily noticed; [2] defendant's duties as compared to those of other employees; [3] defendant's level of specialized knowledge; [4] defendant's level of authority in the position; and [5] the level of public trust.' " *United States v. Haber*, 251 F.3d 881, 890–91 (10th Cir. 2001) (quoting *United States v. Williams*, 966 F.2d 555, 557 (10th Cir. 1992)).  "The primary concern of § 3B1.3 is to penalize defendants who take advantage of a position that provides them freedom to commit or conceal a difficult-to-detect wrong." *United States v. Koehn*, 74 F.3d 199, 201 (10th Cir. 1996).

Recommending enhancement, the PSR provided the following facts concerning the particular job specifications of Defendant's position as Labor Contractor for WR Johnson & Sons, LLC: (1) from 1997 to July 2009, Defendant worked as a Labor Contractor for WR Johnson and Sons, LLC; (2) after paying his employees, Defendant would average an annual salary of between $40,000 to $50,000; (3) Defendant's duties included taking care of the day-to-day operations of the Johnson's agricultural land; (4) the Johnson family owns approximately 3,000 acres of agricultural land in Luna County, some of it in close proximity to the international border between the United States and Mexico; (5) Defendant was entrusted in hiring seasonal employees to farm the land; (6) Defendant was entrusted with verifying that the employees were legally authorized to work in the United States; (7) Defendant was paid by the Johnson family for the work completed by the

seasonal workers, and Defendant would then take a portion of the earnings to pay the employees;

(8) Defendant typically oversaw between 20 and 400 seasonal employees.  Additionally, at trial,

material witnesses Mr. Oliveros-Martinez and Ms. Suarez-Moreno (the undocumented aliens)

testified as to how they were instructed to cross the border and disguise themselves by blending in

with the onion pickers in the field, how they made contact with Defendant in the field, and how they

were then transported from the field to a trailer controlled by Defendant, who stopped by that

evening to give them food and water.

Based on this information, it appears that Defendant had considerable "individual authority"

over his workers and his work environment. *Spear*, 491 F.3d at 1156.  In other words, Defendant's

duties were less ministerial than managerial, and he was permitted "to engage in case-by-case

decision-making, to set policies, and to grant exceptions to governing policies or protocols." *Id*. at

1155.  As a farm labor contractor, Defendant essentially served as an independent contractor who

was entrusted by WR Johnson & Sons, LLC with overseeing the agricultural operations of the land

and who had full authority over the employees he hired.  Thus, provided the crops got harvested, it

appears that WR Johnson & Sons, LLC had very little input about how the work was done or what

protocols Defendant should follow.  Based on these criteria, it appears that Defendant possessed a

position of private trust with the company.

Defendant argues, however, that Mr. Majalca-Aguilar did not hold a position of trust, as

described in U.S.S.G. § 3B1.3, as "there must be a nexus between the abuser of a position of trust

and the victim," which is not present in this case. (Doc. 68 at 5; Doc. 71 at 4.)  Under Tenth Circuit

law, the Court must consider whether Defendant held a position of trust "in relation to the victim

of the offense." *United States v. Guidry*, 199 F.3d 1150, 1160 (10th Cir. 1999).  The § 3B1.3

enhancement has been most commonly applied where there exists a fiduciary relationship with

someone in a position of trust, who uses that relationship to commit financial fraud or embezzlement. *See, e.g.*, *United States v. Edwards*, 325 F.3d 1184, 1187 (10th Cir. 2003) (bank fraud); *Haber*, 251 F.3d 881 (wire and mail fraud); *United States v. Trammell*, 133 F.3d 1343 (10th Cir. 1998) (mail fraud, wire fraud, and money laundering); *United States v. Brunson*, 54 F.3d 673 (10th Cir. 1995) (wire fraud, money laundering, and defrauding foreign company).  Yet, the § 3B1.3 enhancement is clearly applicable to a broader range of cases than those involving fiduciary relationships in the employer-employee, corporate, or personal investment contexts.

According to the Sentencing Guidelines, the enhancement also "applies in the case of . . . the criminal sexual abuse of a patient by a physician under the guise of an examination." § 3B1.3, *application note 1*.  Additionally, it applies in the case of mail theft or the unlawful use of one's identification. § 3B1.3, *application note 2*; *United States v. Willis*, 476 F.3d 1121 (10th Cir. 2007); *United States v. Leach*, 417 F.3d 1099 (10th Cir. 2005).  And it has been applied in cases where public figures or employees abused a position of trust with their community. *See, e.g.*, *United States v. Chee*, 514 F.3d 1106, 1117–18 (10th Cir. 2008) (concluding that position of trust enhancement applied to tribal medicine man); *United States v. Roberts*, 185 F.3d 1125 (10th Cir. 1999) (applying enhancement where tribal police officer used his position of trust to sexually abuse subordinate female employees); *United States v. Williamson*, 53 F.3d 1500, 1525 (10th Cir. 1995) (concluding that imposition of enhancement for abuse of position of public trust was appropriate where defendant used his position as a police officer to further drug operation).

In each of these cases, however, the defendant held a position of trust in relation to the victim of the crime. *See Guidry*, 199 F.3d 1150 (concluding that enhancement did not apply because defendant "did not occupy a position of trust vis-à-vis the government, the victim in this case").  In other words, the Court must look at the offense for which Defendant was convicted—conspiracy to

smuggle undocumented aliens into the United States—and then ask who the victim of the crime was and whether Defendant abused a position of trust vis-à-vis this victim. *Id*. In the case at hand, the victim of Defendant's crime is somewhat amorphous. Other than having their trust betrayed that Defendant would act lawfully, it does not appear that WR Johnson & Sons, LLC suffered any negative consequences from Defendant's unlawful acts; nor can the undocumented aliens who were apprehended be considered the victims of his crime, as they were being assisted by Defendant to illegally enter the United States. Accordingly, the primary victims of the crime are the United States government and the public at large, who must bear the negative consequences of illegal immigration. Defendant, however, was not in a position of trust with respect to the government or the public at large; therefore, the imposition of a two-level enhancement under § 3B1.3 is not appropriate.

Lastly, there is the issue of whether the enhancement may be based on a special skill possessed by Defendant. The application notes define "special skill" as "a skill not possessed by members of the general public and usually requiring substantial education, training, or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." U.S.S.G. § 3B1.3, *application note 2*; *see also Burt*, 134 F.3d at 999 ("drug-dealing 'skills' cannot reasonably be equated with the skills developed and possessed by 'pilots, lawyers, doctors, accountants, chemists and demolition experts"). It does not appear that Defendant possessed a special skill. Furthermore, the PSR recommends a two-level enhancement for role adjustment under § 3B1.1 (PSR at 10), and a sentencing enhancement under U.S.S.G. § 3B1.3 for abuse of a position of trust cannot be applied in addition to an adjustment under § 3B1.1 "if the adjustment is based solely on the use of a special skill." U.S.S.G. § 3B1.3. Consequently, a two-level enhancement for use of a special skill is not appropriate.

**C.** **Aggravating Role Enhancement: Government Argues Defendant Should Receive Four-Level Enhancement Pursuant to U.S.S.G. § 3B1.1(a), Rather Than a Two-Level Enhancement Pursuant to U.S.S.G. § 3B1.1(c)**

"To impose the 4-level increase [under § 3B1.1(a)], the sentencing court must make two findings of fact: first, that defendant is an organizer or leader; and, second, that the criminal activity involved five or more participants or was otherwise extensive." *United States v. Roberts*, 14 F.3d 502, 523 (10th Cir. 1993). The government argues that a four-level enhancement under § 3B1.1(a) is appropriate. Defendant contests both prongs, arguing that the number of participants in the conspiracy has not been proven by the government and that, while Defendant may have served as a manager in the criminal enterprise, he was not an organizer or leader.

As the number of people involved in the criminal enterprise and whether Defendant served as an organizer or leader were contested, the Court held a brief evidentiary hearing on this matter to help resolve the dispute. While the Court "may accept any undisputed portion of the presentence report as a finding of fact," the Court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." FED. R. CRIM. P. 32(i)(3)(A)&(B). In the case at hand, there are clearly disputes with regard to imposing a four-level enhancement under § 3B1.1(a), and the PSR did not provide a sufficient evidentiary basis for the imposition of a four-level enhancement.

At the evidentiary hearing, United States Border Patrol Agent Victor Garcia testified that there were at least six people involved in the criminal enterprise: (1) Defendant, who was labor contractor and managed the onion fields; (2) Stephen May, who transported the aliens to Albuquerque and was arrested by Border Patrol agents on July 15, 2009; (3) Kristin Dawn Macias, who was arrested with Mr. May; (4) Vielka Ramirez, who served as a lookout or scout for Defendant

to watch for Border Patrol agents; (5) "El Guerro," the person who met the illegal aliens in Palomas, Mexico and then drove them to the place near the onion fields where they would cross the border; and (6) the unidentified person who drove them from the onion fields to the trailer. (Doc. 75.)  The application notes to § 3B1.1 indicate that a participant does not have to have been convicted of the crime to be considered part of the criminal enterprise, only that he be "criminally responsible for the offense." U.S.S.G. § 3B1.1(c), *application note 1*.  Thus, even though some of the participants were unidentified, the Court finds that they were aware of their participation in the conspiracy, and therefore, criminally responsible.  Consequently, the Court finds that the criminal enterprise involved five or more participants.

Next, Defendant argues that the evidence establishes that "El Guerro" was the leader of the smuggling operation.  Additionally, Defendant argues that the indefiniteness and lack of information with regard to the details of the criminal enterprise and its organizational structure preclude imposition of a four-level enhancement under § 3B1.1(a). (Doc. 71 at 5.)

> In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility. This is reflected in the inclusiveness of § 3B1.1(c).

U.S.S.G. § 3B1.1, *background*.  In other words, because the smuggling operation was relatively small and did not possess the same rigid hierarchy and planning that a larger, more complicated criminal enterprise might, Defendant argues that the lines between leader and manager were blurred, and in such cases, the guidelines only allow the imposition of a two-level enhancement under § 3B1.1(c).

The applications notes also indicate, however, that "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G.

11

§ 3B1.1, *application note 4*. This appears to be the situation at hand. Defendant served as the leader

of the criminal enterprise in the United States, and "El Guerro" served as the leader of the enterprise

in Mexico. In the United States, Defendant recruited accomplices, claimed a larger portion of the

profits than other members, planned and organized the offense, and exercised control over others.

*Id*. Thus, Defendant clearly served as an organizer or leader here in United States, exercising

decision-making authority over the enterprise, and "El Guerro" apparently exercised similar

authority in Mexico. Consequently, the Court finds that a four-level enhancement under § 3B1.1(a)

is appropriate.

## III.    CONCLUSION

In the case at hand, the PSR recommended **(A)** a three-level enhancement for smuggling,

transporting, or harboring of six to twenty-four unlawful aliens under U.S.S.G. § 2L1.1(b)(2)(A);

**(B)** a two-level enhancement for abusing a position of public or private trust under U.S.S.G.

§ 3B1.3; and **(C)** a two-level enhancement for Defendant's role in the criminal enterprise as an

organizer, leader, manager, and supervisor under U.S.S.G. § 3B1.1(c). Defendant objected to the

PSR on the grounds that the three-level enhancement for smuggling six to twenty-four illegal aliens

and the two-level enhancement for abusing a position of trust were inappropriate. The government

objected to the PSR on the grounds that a two-level enhancement under § 3B1.1(c) was

inappropriate, arguing instead that Defendant should receive a four-level enhancement under

§ 3B1.1(a) for serving as an organizer or leader of a criminal enterprise that involved five or more

participants.

With regard to Defendant's objection to the three-level enhancement for smuggling six to

twenty-four aliens § 2L1.1(b)(2)(A), there was substantial evidence presented at trial indicating that

Defendant conspired in the smuggling of six to eight undocumented aliens. The Court considered

this evidence reliable and imposed a three-level enhancement.

With regard to the two-level enhancement for abusing a position of trust under § 3B1.3 recommended in the PSR, the Court concluded that this enhancement was not appropriate because Defendant did not occupy a position of trust vis-à-vis the victim in this case.  Under Tenth Circuit law, this lack of a nexus between the offense charged and the victim precluded application of the enhancement.

Finally, with regard to the role enhancement under § 3B1.1, the parties disputed the number of participants in the criminal enterprise and whether Defendant held a position as a leader or organizer.  Ultimately, the Court found that a four-level enhancement was appropriate because there was significant evidence indicating the criminal enterprise involved five or more participants and that Defendant served as the leader or organizer of the enterprise here in the United States.

**WHEREFORE, IT IS HEREBY ORDERED** as follows:

1. The Court imposes a three-level enhancement under § 2L1.1(b)(2)(A) for conspiring to smuggle, transport, or harbor six to twenty-four undocumented aliens;

2. The Court will NOT impose a two-level enhancement for abusing a position of public or private trust under § 3B1.3;

3. The Court imposes a four-level enhancement under § 3B1.1(a) for serving as an organizer or leader of a criminal enterprise with five or more participants; and

4. The Court imposes a total adjusted offense level of nineteen (19).

_____
**ROBERT BRACK**
**UNITED STATES DISTRICT JUDGE**